# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**Miscellaneous Matter No. 14-232 & 14-231**

| | | |
|---|---|---|
| _____ | : | |
| **IN RE:** | : | |
| **RITE WAY ELECTRIC, INC.,** | : | **Chapter 7** |
| | : | |
| Debtor, | : | **No. 11-19633 (SR)** |
| _____ | : | |
| | : | |
| **TERRY P. DERSHAW, TRUSTEE, by** | : | |
| **SILVERANG, DONOHOE,** | : | **Adv. Pro. No. 14-00026** |
| **ROSENZWEIG & HALTZMAN, LLC,** | : | |
| **Special Counsel to Chapter 7 Trustee,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **Albert A. Ciardi, III,** | : | |
| Defendant. | : | |
| _____ | : | |
| | : | |
| **TERRY P. DERSHAW, TRUSTEE, by** | : | |
| **SILVERANG, DONOHOE,** | : | |
| **ROSENZWEIG & HALTZMAN, LLC,** | : | |
| **Special Counsel to Chapter 7 Trustee,** | : | |
| Plaintiff, | : | **Adv. Pro. No. 14-00027** |
| | : | |
| v. | : | |
| | : | |
| **Ciardi Ciardi & Astin, P.C.,** | : | |
| Defendant. | : | |
| _____ | | |

A Chapter 7 bankruptcy trustee filed adversary proceedings in Bankruptcy Court against the bankrupt corporation's attorney and against his law firm. The attorney and law firm filed motions in this court to withdraw the reference of those actions to Bankruptcy Court. They seek to have this court oversee the proceedings because they have made jury trial demands and did not consent to the jurisdiction of the Bankruptcy Court. I address their motions together because they involve the same underlying facts. I will deny their motions to withdraw a reference without prejudice.

## I.      Background

### A.  The Chapter 7 Petition against Rite Way Electric, Inc.[1]

On December 20, 2011, International Brotherhood of Electrical Workers Local 654 Health & Welfare Fund, International Brotherhood of Electrical Workers Local 654 Pension Fund, and International Brotherhood of Electrical Workers Local 654 Annuity Fund filed a Chapter 7 Involuntary Bankruptcy Petition against Rite Way Electric, Inc. Shortly thereafter, three additional entities joined in the petition. Rite Way Electric, which was represented by Albert Ciardi III of Ciardi Ciardi & Astin, P.C., moved to dismiss the petition.

On February 9, 2012, Judge Raslavich of the Bankruptcy Court entered an Order for Relief, allowing the bankruptcy to move forward. On February 14, 2012, Marvin Krasny was appointed the Chapter 7 Trustee. Marvin Krasny died while the bankruptcy was pending. On April 26, 2013, the Bankruptcy Court appointed Terry Dershaw as the new trustee.

---

[1] Information from this section can be found in 14-mc-232, Doc. No. 3, Ex. C (the bankruptcy petition's docket report), unless otherwise noted.

**B. Adversary Proceedings Against Albert Ciardi and Ciardi Ciardi & Astin, P.C.[2]**

On January 22, 2014, Dershaw—as Trustee—filed a complaint against Rite Way's counsel Albert Ciardi (the Ciardi Complaint) and another complaint against counsel's law firm Ciardi Ciardi & Astin (the CCA Complaint). The complaints involved several contract arrangements and/or monetary transfers between Rite Way, its principals, Ciardi, and/or CCA around the time the bankruptcy petition was filed.

**1. Factual Basis for Adversary Proceedings**

The Ciardi Complaint alleged that Rite Way Electric had performed services for Ciardi's two personal homes. Ciardi allegedly never paid for those services in full before the petition was filed. At the time the petition was filed, Ciardi allegedly owed Rite Way money for the services rendered.[3] The Schedules and Statement of Financial Affairs did not disclose this debt nor any setoff, forgiveness of a loan, or transfer of assets to satisfy the debt.

The actions against Ciardi and CCA ("the defendants," collectively) were based on documents and receipts the Trustee had found amongst Rite Way's financial documents. The Trustee had found a receipt for services performed for Ciardi between August 26, 2010 through September 27, 2011. These services were valued at $67,705.33.[4] Upon finding the receipt, the Trustee requested payment by Ciardi. He indicated that no amount was owed or due. The Trustee has not been provided evidence that these services were ever paid for by Ciardi.

---

[2] Information from this section can be found in 14-mc-232, Doc. No. 3, Ex. A & B (the bankruptcy petition's docket report), unless otherwise noted.

[3] Ciardi Complaint, 14-00026-sr (Bankr. E.D. Pa.), Doc. No. 1 at ¶ 28.

[4] Ciardi Complaint, 14-00026-sr (Bankr. E.D. Pa.), Doc. No. 1, Ex. A.

A month before the petition was filed, Rite Way wrote a check to CCA on November 17, 2011. That check was then voided. It was replaced on November 18, 2011 by a cashier's check to CCA in the amount of $50,000.[5] On November 18, 2011, another check (#36107) in the amount of $50,000 was written from Rite Way to Donn Kirk—a Principal of Rite Way—and marked as a travel expense.[6] Just before this—on November 15, 2011—John and Lucille Parks (John Parks is another Principal of Rite Way) wrote a check (#681) to Rite Way from their joint account in the amount of $50,000.[7] On November 17, 2011, John and Lucille Parks also wrote a check to CCA for $50,000 from their joint account.[8]

On February 3, 2012—after the bankruptcy petition had been filed but before Krasny was appointed as Trustee—Rite Way wired CCA two payments in the amounts of $20,000 and $26,000, leaving little money in Rite Way's Bank Account.[9] On February 3, 2012—post-petition and after the appointment of Krasny as Trustee—Ciardi wrote a check to Local 654 in the amount of $28,672 from CCA's IOLTA Account in order to settle a debt of Rite Way with the Union.[10] These transfers were not disclosed on the Schedule and Statement of Financial Affairs.

## 2. Initial Complaints against Ciardi and CCA

---

[5] CCA Complaint, 14-00027-sr (Bankr. E.D. Pa.), Doc. No. 1 at ¶ 24 and Ex. A.

[6] CCA Complaint, 14-00027-sr (Bankr. E.D. Pa.), Doc. No. 1 at ¶ 26 and Ex. B.

[7] CCA Complaint, 14-00027-sr (Bankr. E.D. Pa.), Doc. No. 1 at ¶ 27 and Ex. C.

[8] CCA Complaint, 14-00027-sr (Bankr. E.D. Pa.), Doc. No. 1 at ¶ 28 and Ex. C.

[9] CCA Complaint, 14-00027-sr (Bankr. E.D. Pa.), Doc. No. 1 at ¶¶ 31 & 32 and Ex. D.

[10] CCA Complaint, 14-00027-sr (Bankr. E.D. Pa.), Doc. No. 1 at ¶ 34 and Ex. E. Ciardi was allegedly facing pressure from the Union to settle this debt. Id.

On the basis of these allegations, the Ciardi Complaint asserted claims for: (1) explanation of undisclosed transfers pursuant to 11 U.S.C. § 329 (Debtor's transactions with attorneys); (2) turnover of property of the estate and accounting pursuant to 11 U.S.C. § 542 (Turnover of property to the estate); (3) disallowance of Ciardi's claim or future claim pursuant to 11 U.S.C. § 502(d) and (j) (Allowance of claims or interests); (4) avoidance of preferential transfers pursuant to 11 U.S.C. § 547 (Preferences); (5) fraud; (6) unjust enrichment; (7) avoidance and recovery of actual and/or constructive fraudulent transfers pursuant to 11 U.S.C. §§ 548(A)(1)(A) & (B), 550(A), and 551. The CCA Complaint asserted claims for: (1) demand for explanation of undisclosed transfers pursuant to 11 U.S.C. § 329 (Debtor's transactions with attorneys); (2) avoidance of preferential transfers pursuant to 11 U.S.C. § 547 (Preferences); (3) avoidance of post-petition transfers pursuant to 11 U.S.C. § 549 (Postpetition transactions); (4) avoidance and recovery of actual or constructive transfers avoided pursuant to 11 U.S.C. §§ 548(A)(1)(A) & (B), 550, and 551; (5) disallowance of claims pursuant to 11 U.S.C. § 502 (Allowance of claims or interests); and (6) breach of fiduciary duty.

On February 24, 2014, Ciardi and CCA moved to dismiss the complaints against them, as unsubstantiated and legally insufficient under Rule 12(b)(6).[11] The motions to dismiss did not raise the issue of whether jurisdiction was appropriate.

---

[11] See CCA Complaint, 14-00027-sr (Bankr. E.D. Pa.), Doc. No. 5; Ciardi Complaint, 14-00026-sr (Bankr. E.D. Pa.), Doc. No. 5.

In responding to the motions to dismiss, the Trustee admitted that Count VII against CCA and Count III against Ciardi (regarding disallowance of all claims pursuant to 11 U.S.C. § 502) should be dismissed. See 14-00027-sr (Bankr. E.D. Pa.), Doc. No. 7 at 14–15; 14-00026-sr (Bankr. E.D. Pa.), Doc. No. 7 at 11.

On May 1, 2014, the Bankruptcy Court granted Ciardi's motion without prejudice and ordered CCA to file a Statement outlining their compensation for legal services under Rule 2016(b).[12]

### 3.   Amended Complaints against Ciardi and CCA

On May 14, 2014, the Trustee filed Motions for Clarification, requesting that the court grant him leave to amend the complaints. Ciardi and CCA opposed the motions. The Bankruptcy Court held oral argument on June 18, 2014 on the Motions for Clarification. At the end of the hearing, Judge Raslavich ruled from the bench that he would not grant the Motions for Clarification but would allow the Trustee to file motions for leave to amend the complaints. On July 29, 2014, the Trustee filed Motions for Leave to Amend, attaching the proposed amended complaints. Ciardi and CCA opposed these motions. Judge Raslavich granted these motions on August 27, 2014.

The Trustee filed Amended Complaints against Ciardi and CCA on September 3, 2014. The Amended Complaints provided further evidence of the Trustee's initial allegations.[13] The

---

[12] See In re Rite Way Elec., Inc., 510 B.R. 471, 490 (Bankr. E.D. Pa. 2014).

Rule 2016(b) states:

> **(b) Disclosure of compensation paid or promised to attorney for debtor**
> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

Trustee narrowed the claims asserted against Ciardi and CCA in the Amended Complaints. The

Amended Complaint against Ciardi only included the following claims: (1) unjust

enrichment/quantum merit; (2) breach of contract; (3) avoidance of post-petition transfers

pursuant to 11 U.S.C. § 549 (Postpetition transactions);[14] and (4) recovery of transfers avoided

---

[13] The Trustee included email exchanges between Rite Way Donn Kirk (Principal) and a Rite Way employee and other financial statements to support the amended allegations. See CCA Complaint, 14-00027-sr (Bankr. E.D. Pa.), Doc. No. 23 at ¶¶ 24–46; Ciardi Complaint, 14-00026-sr (Bankr. E.D. Pa.), Doc. No. 26 at ¶¶ 24–44.

[14] 11 U.S.C. § 549 (Postpetition transactions) states:
    (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--
        (1) that occurs after the commencement of the case; and
        (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
        (B) that is not authorized under this title or by the court.

    (b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

    (c) The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

    (d) An action or proceeding under this section may not be commenced after the earlier of--
        (1) two years after the date of the transfer sought to be avoided; or
        (2) the time the case is closed or dismissed.

pursuant to 11 U.S.C. § 550 (Liability of transferee of avoided transfer).[15] The Amended

Complaint against CCA only included claims under the Bankruptcy Code for: (1) avoidance of

---

[15] 11 U.S.C. § 550 (Liability of transferee of avoided transfer) states:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
   (2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section 1 (a)(2) of this section from--
   (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
   (2) any immediate or mediate good faith transferee of such transferee.

(c) If a transfer made between 90 days and one year before the filing of the petition--
   (1) is avoided under section 547(b) of this title; and
   (2) was made for the benefit of a creditor that at the time of such transfer was an insider;

the trustee may not recover under subsection (a) from a transferee that is not an insider.

(d) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

(e)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of--
   (A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and
   (B) any increase in the value of such property as a result of such improvement, of the property transferred.
   (2) In this subsection, "improvement" includes--
    (A) physical additions or changes to the property transferred;
    (B) repairs to such property;
    (C) payment of any tax on such property;
    (D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and
    (E) preservation of such property.

(f) An action or proceeding under this section may not be commenced after the earlier of--

8

preferential transfers pursuant to 11 U.S.C. § 547;[16]  (2) avoidance of post-petition transfers

pursuant to 11 U.S.C. § 549 (Postpetition transactions); and (3) recovery of transfers avoided

pursuant to 11 U.S.C. § 550 (Liability of transferee of avoided transfer).

---

(1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or
(2) the time the case is closed or dismissed.

[16] 11 U.S.C. § 547 (Preferences) states (in relevant part):
(a) In this section--…
(3) "receivable" means right to payment, whether or not such right has been earned by performance; and…

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made--
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if--
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer--
(1) to the extent that such transfer was--
(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange;
(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
(B) made according to ordinary business terms;
(3) that creates a security interest in property acquired by the debtor--

(A) to the extent such security interest secures new value that was--
    (i) given at or after the signing of a security agreement that contains a description of such property as collateral;
    (ii) given by or on behalf of the secured party under such agreement;
    (iii) given to enable the debtor to acquire such property; and
    (iv) in fact used by the debtor to acquire such property; and
(B) that is perfected on or before 30 days after the debtor receives possession of such property;

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor--
    (A) not secured by an otherwise unavoidable security interest; and
    (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

(5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of--
    (A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or
      (ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or
    (B) the date on which new value was first given under the security agreement creating such security interest;

(6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title;

(7) to the extent such transfer was a bona fide payment of a debt for a domestic support obligation;

(8) if, in a case filed by an individual debtor whose debts are primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $600; or

(9) if, in a case filed by a debtor whose debts are not primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $6,4251.

(d) The trustee may avoid a transfer of an interest in property of the debtor transferred to or for the benefit of a surety to secure reimbursement of such a surety that furnished a bond or other obligation to dissolve a judicial lien that would have been avoidable by the trustee under subsection (b) of this section. The liability of such surety under such bond or obligation shall be discharged to the extent of the value of such property recovered by the trustee or the amount paid to the trustee.

(e)(1) For the purposes of this section--

(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made--

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B);

(B) at the time such transfer is perfected, if such transfer is perfected after such 30 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of--

(i) the commencement of the case; or

(ii) 30 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

(g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

(h) The trustee may not avoid a transfer if such transfer was made as a part of an alternative repayment schedule between the debtor and any creditor of the debtor created by an approved nonprofit budget and credit counseling agency.

(i) If the trustee avoids under subsection (b) a transfer made between 90 days and 1 year before the date of the filing of the petition, by the debtor to an entity that is not an insider for the benefit of a creditor that is an insider, such transfer shall be considered to be avoided under this section only with respect to the creditor that is an insider.

11

### 4.   Ciardi and CCA's Motions for Withdrawal of a Reference

Ciardi and CCA filed answers on September 17, 2014 in Bankruptcy Court. In their answers, Ciardi and CCA "did not consent" to the jurisdiction of the Bankruptcy Court and included jury demands.[17] In addition to offering affirmative defenses, CCA  filed a counterclaim "for a determination under 11 U.S.C. §§ 105 and 506 that all property transferred by the Debtor within ninety (90) days of the Petition Date were not transfers of property of the estate and, therefore, are not preferential payments under 11 U.S.C. § 547." Neither Ciardi nor CCA have filed a proof of claim in bankruptcy court, asserting a right to property owed them by Rite Way.[18] However, CCA is listed as a creditor on the Schedules and Statement of Financial Affairs filed by Rite Way in Bankruptcy Court.[19]

On September 18, 2014, the defendants also filed motions in this court to withdraw a reference to Bankruptcy Court of the complaints against them.

### II.   Standard for Withdrawal of a Reference to Bankruptcy Court

District courts may refer certain cases to bankruptcy judges: (1) "any or all cases" under the Bankruptcy Code and "any or all proceedings arising under" the Bankruptcy Code, or (2) proceedings related to a case under the Bankruptcy Code.  28 U.S.C. § 157(a). The bankruptcy judge may oversee those proceedings and enter judgments or orders subject to review of the district court. 28 U.S.C. § 157(b)(1). See also 28 U.S.C. § 158. This reference is typically made automatically when a case relates to a bankruptcy.

---

[17] See CCA Complaint, 14-00027-sr (Bankr. E.D. Pa.), Doc. No. 25 at ¶¶ 1–4; Ciardi Complaint, 14-00026-sr (Bankr. E.D. Pa.), Doc. No. 28 at ¶¶ 1–4.

[18] See 14-mc-232, Doc. No. 1, at 4 n. 3.

[19] See 14-mc-231, Doc. No. 3 at 3.

Once a case is "referred," the district court may "withdraw a reference" of a case in whole or part "on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). This is a permissive withdrawal. See, e.g., Northwestern Institute of Psychiatry, Inc. v. Travelers Indem. Co., 272 B.R. 104, 107 (E.D. Pa. 2001); In re Winstar Communications, Inc., No. 01–01430, 01–01063, Civ.A.04–928–JJF, 2004 WL 2713101, at *1, *3 (D. Del. Nov. 16, 2004).

The district court must withdraw a reference on timely motion of a party if the "resolution of the proceeding requires consideration of both title 11 [the Bankruptcy Code] and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). This would be a mandatory withdrawal. See, e.g., S.V. v. Kratz, Nos. 12–C–705, 10–C–919, 2012 WL 3070979, at *1 (E.D. Wis. Jul. 26, 2012); In re U.S. Airways Group, Inc., 296 B.R. 673, 676–77 (E.D. Va. 2003).

## III.    Discussion

The defendants provide two legal bases for withdrawal: (1) "cause shown" under § 157(d), and (2) their jury demand coupled with their lack of consent to the bankruptcy court's jurisdiction.[20]

### A.  Permissive Withdrawal of a Reference

Ciardi and CCA request a permissive withdrawal based on "cause" shown.[21] See 28 U.S.C. § 157(d). The burden to show "cause" is on Ciardi and CCA. See, e.g., Feldman v. ABN AMRO Mortg. Group Inc., 515 B.R. 443, 452 (E.D. Pa. 2014) (citing

---

[20] The defendants' points about their right to a jury trial appear to be a separate jurisdictional argument for withdrawal from their request for a permissive withdrawal (and not simply a part of the § 157(d) analysis).

In re NDEP Corp., 203 B.R. 905, 907 (D. Del. 1996)).

The bankruptcy statute does not define "cause."[22] The Third Circuit's decision In re Pruitt provides factors for a district court to consider whether "cause" exists:

(1) the promotion of uniformity in bankruptcy administration,

(2) the reduction of forum shopping and confusion,

(3) the economical use of the debtors' and creditors' resources,

(4) expediency of the bankruptcy process, and

(5) the timing of the request for withdrawal.

In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990) (adopting Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992, 999 (5th Cir. 1985)).

The Pruitt factors do not warrant withdrawal of a reference at this time. The first and third factors weigh against withdrawal. Allowing these actions to remain in Bankruptcy Court would promote uniformity in bankruptcy administration. After several years of overseeing the bankruptcy estate and several months litigating the specific adversary proceedings in this case, Judge Raslavich is much more familiar with the relationships between Rite Way, Ciardi, CCA, and the principals of Rite Way. Given that he is administering the bankruptcy action, he has a better frame with which to view how the money transfers in question relate to the estate's assets.

---

[21] The claims against Ciardi and CCA are either premised on the Bankruptcy Code and/or involve state law (not other federal statutes); the mandatory withdrawal provision is inapplicable. Neither party contends a mandatory withdrawal under the statute is appropriate.

[22] See, e.g., In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990); In re Eagle Enterprises, Inc., 259 B.R. 83, 87 (Bankr. E.D. Pa. 2001) ("[T]here is no statutory definition of what constitutes 'cause shown' under 28 U.S.C. § 157(d)."); In re Pelullo, Nos. 95–22430, 96–2254, 96–MC–303, 1997 WL 535155, at *2 (E.D. Pa. Aug. 15, 1997) ("There is no statutory definition of what constitutes 'cause shown' under 28 U.S.C. § 157(d) for permissive withdrawal of reference.").

This information may be important to understanding the nature of the claims asserted in the adversary proceedings.

The defendants argue that it would be more economical for this court to oversee the pre-trial and discovery matters of these actions given that this court may have to hold a jury trial on the actions.[23] As I explain below, the defendants have not provided me with enough information to determine if, in fact, they have a right to a jury trial on the claims asserted against them. Assuming that they are entitled to a jury trial, it would still be more favorable for Judge Raslavich to oversee the adversary proceedings at this stage of litigation. He is already more familiar with the facts of these proceedings and the relevant law.[24]

The second factor weighs against withdrawal. I will not assume that the defendants' filing these motions is an attempt to "forum shop," as the Trustee argues. However, allowing a

---

[23] The defendants only address factors 3 and 5, stating that the other factors have no effect on the analysis.

[24] As I explain below, the defendants have failed to address some of the important facts and legal questions affecting the outcome of these proceedings (i.e., whether the defendants, in fact, are attempting to have a claim on the bankruptcy estate, etc.). See In re Lloyd Securities, Inc., 1993 156 B.R. 750, 752 (Bankr. E.D. Pa. 1993) ("[W]hen a creditor presents a 'claim' against the bankruptcy estate, that creditor triggers the process of allowance and disallowance of claims, thereby subjecting the creditor to the bankruptcy court's equitable powers and placing the parties' dispute into the arena of 'public rights,' i.e., the public restructuring of debtor-creditor relations."). See also In re Barto, Bkrtcy. No. 93-22540-JKF, 1996 WL 16664, at *4 (Bankr. W.D. Pa. Jan. 16, 1996) ("Taylor-Winfield chose to raise its claim in this court by filing a permissive counterclaim. In so doing, Taylor-Winfield has submitted to the jurisdiction of this court because the filing of the permissive counterclaim, in essence, invoked the claims allowance process. The effect is the same as it would have been had Taylor-Winfield filed a formal proof of claim.") and at *7 ("On the basis of Langenkamp and its progeny, we conclude that a creditor subjects itself to the jurisdiction of the bankruptcy court by filing a permissive counterclaim.  We conclude that Taylor-Winfield has subjected itself to the jurisdiction of this court and no longer has the right to a jury trial."). From the information I have been provided, it may simply be that those questions are not ripe for this court to answer. Allowing the proceedings to continue pre-trial before Judge Raslavich will, hopefully, provide more information on how those open questions should be answered.

withdrawal at this time—just after the defendants received an unfavorable determination by the Bankruptcy Court, following several months of litigation—could create precedent that may encourage "forum shopping" by later litigants. Furthermore, denying the withdrawal at this time will streamline the handling of the claims in the adversary proceedings and prevent confusion.

The fourth factor appears to be neutral or weigh against withdrawal. Withdrawing a reference will not necessarily expedite the bankruptcy administration process. However, there is a chance that the Bankruptcy Court may have to wait for this court to adjudicate the merits of the adversary proceedings (since this court will have to become familiar with the relevant actions). Keeping these actions in Bankruptcy Court will allow the Bankruptcy Court Judge to monitor these adversary proceedings, as they relate to the larger bankruptcy estate. The Bankruptcy Judge's knowledge of this "piece" of the bankruptcy estate may also allow him to more efficiently administer the estate.

Lastly, the final factor—the timing of the defendants' motions—weighs against withdrawal. While it is true that the defendants filed their motions only after amended complaints were filed, these motions came after Judge Raslavich had already considered and ruled upon several motions regarding the merits of the adversary proceedings.[25] His handling of

---

[25] To support their arguments on timing, the defendants cite In re Schlein, 188 B.R. 13 (E.D. Pa. 1995). Schlein granted a motion for withdrawal after the debtor added a Racketeer Influenced and Corrupt Organizations Act (RICO) claim to his amended complaint. Id. at *14. Because the RICO claim would require "substantial and material" consideration of a federal law beyond the Bankruptcy Code, Schlein considered the withdrawal to be "mandatory" under 28 U.S.C. § 157(d). Unlike Schlein, the amended complaints did not add a federal non-bankruptcy claim; in fact, the amended complaints *narrowed* the claims asserted in the initial complaints. If the defendants were concerned about the Bankruptcy Court's jurisdiction over the non-bankruptcy claims, the seemingly more appropriate time to address this point would be at the filing of the initial complaints. Schlein is distinguishable, and the defendants' arguments are not helpful in this regard.

16

those motions better positions him to handle discovery matters and pre-trial motions for those complaints.

I will deny the defendants' request for withdrawal under § 157(d).

## B.  Ciardi and CCA's Other Arguments For Withdrawal

Ciardi and CCA also argue that this court "must" withdraw a reference because they have not consented to the jurisdiction of the Bankruptcy Court and request a jury trial.[26] If a proceeding provides a right to a jury trial, "the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. § 157(e). Ciardi and CCA, however, fail to address the legal analysis necessary to show that they do, in fact, have a right to a jury trial for the claims asserted against them. See Granfinanciera S.A. v. Nordberg, 492 U.S. 33, 42–56 (1989) (offering a three-step test to determine whether a bankruptcy claim provides a right to a jury trial); Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d 1242, 1253 (3rd Cir. 1994) (Third Circuit

---

[26] Some courts have addressed the request for a jury demand as part of the "cause" analysis. See, e.g., Pennsylvania Academy of Music v. Regitz, No. 10–14377, 2010 WL 4909952, at *3 (E.D. Pa. Nov. 30, 2010) ("Another factor sometimes considered by courts analyzing whether withdrawal is appropriate is whether the parties have requested a jury trial.") (quoting In re NDEP Corp., 203 B.R. 905, 908 (D. Del. 1996) (quotation marks and additional citation omitted)).

Even if I were to consider their jury demand in the permissive withdrawal analysis, the jury demand alone would not be enough to "tip the scales" in the defendants' favor at this stage of litigation. See Am. Classic Voyages Co. v. Westaff (USA), Inc., 337 B.R. 509, 512 (D. Del. 2006) ("A District Court may consider a demand for a jury trial insufficient cause for discretionary withdrawal if the motion is made at an early stage of the proceedings and dispositive motions may resolve the matter."); In re Carpenter, No. 12–21, 2012 WL 5990222, at *2  (W.D. Pa. Nov. 30, 2012) ("[M]erely asserting a Seventh Amendment right to a jury trial is not of itself sufficient cause to justify discretionary withdrawal." (citing In re Northwestern Inst. of Psychiatry, Inc., 268 B.R. 79, 84 (Bankr. E.D. Pa. 2001)).

interpretation of <u>Granfinanciera</u> framework pertaining to legal malpractice claim brought in bankruptcy).[27]

_____

[27] Ciardi and CCA rely on assumptions and legal conclusions to support their right to a jury trial (i.e., "[I]t is unquestionable that the Bankruptcy Court does not have jurisdiction over the claims against Ciardi in Adv. Pro. No 14-00026…;" arguing that "non-core" claims "cannot be heard in bankruptcy court unless the parties consented to the bankruptcy judge's hearing it" without explaining which claims are "core" and "non-core"). <u>See</u> 14-mc-232, Doc. No. 1 at 3, 7. They do not lay out the appropriate three-step analysis under <u>Granfinanciera</u>.

In addition, the defendants imply that some claims are "core" and may be heard by the Bankruptcy Court, while others are "non-core" (i.e., "[A]ll the claims in this action should be heard in the District Court as it would plainly be inefficient to have two different courts considering interrelated parts of this lawsuit when this Court (and only this Court) has the power to decide the whole case."). <u>See</u> 14-mc-232, Doc. No. 1 at 7. Yet, the defendants never explain their analysis of categorizing the claims. They fail to explain why Judge Raslavich's and the Trustee's categorization of the claims as "core" would be improper. <u>See</u> <u>In re Rite Way Elec., Inc.</u>, 510 B.R. 471, 477 n.1 (Bankr. E.D. Pa. 2014) (citing 28 U.S.C. § 157(b)(2)(A), (E), (F), and (H)).

They also fail to adequately address the Trustee's arguments in rebuttal (i.e., regarding CCA's filing of an informal proof of claim, waiver, implied consent, the categorization of the claims as "core"), which do address the appropriate legal analysis. Even if the defendants are entitled to a jury trial, they may have waived that right. <u>See</u> <u>Wellness Intern. Network, Ltd. v. Sharif</u>, 135 S. Ct. 1932, 1947 (2015) ("Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent; it states only that a bankruptcy court must obtain 'the consent'—consent simpliciter—'of all parties to the proceeding' before hearing and determining a non-core claim. § 157(c)(2).").

Courts often consider whether the claims asserted are within the Bankruptcy Court's "core" jurisdiction or are simply related (i.e., are "non-core"). The determination of a claim as "core" or "non-core" can have jurisdictional implications. <u>See</u> <u>Executive Benefits Ins. Agency v. Arkison (In re Bellingham)</u>, 134 S. Ct. 2165, 2172 (2014) ("If a matter is core, the statute empowers the bankruptcy judge to enter final judgment on the claim, subject to appellate review by the district court. If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law. Then, the district court must review the proceeding <u>de novo</u> and enter final judgment."). A proceeding is "core" if it "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." <u>In re Guild and Gallery Plus, Inc.</u>, 72 F.3d 1171, 1178 (3d Cir. 1996) (citation omitted).

Whether adversary proceedings involve "core" or "non-core" claims is not an easy question to answer, in light of recent Supreme Court precedent on the subject. <u>See</u> <u>Stern v. Marshall</u>, 564

This legal analysis has constitutional implications. It would be imprudent for me to make a decision as to the nature of the claims or the parties' rights without full briefing on the relevant legal questions.

---

U.S. 462 (2011); Executive Benefits Ins. Agency v. Arkison (In re Bellingham), 134 S. Ct. 2165, 2172 (2014) ("Stern made clear that some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy court in the manner designated by § 157(b).") and at  1273 (explaining that if a court finds the labeling of an action as "core" violates constitutional bounds the label is simply severed as null and void). See also Beard v. Braunstein, 914 F.2d 434, 437 (3d Cir. 1990) ("[A] person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer . . . notwithstanding Congress' designation of fraudulent conveyance actions as 'core proceedings' in 28 U.S.C. § 157(b)(2)(H)." (quoting Granfinanciera S.A. v. Nordberg, 492 U.S. 33, 36 (1989)); Feldman v. ABN AMRO Mortg. Group Inc., 515 B.R. 443, 447 (E.D. Pa. 2014) (Goldberg, J.) ("Following Stern, it fell to the lower courts to identify those types of claims that are statutorily defined as core, but which fall outside the scope of the public rights exception.") and at 448 ("Courts within this Circuit are split on whether bankruptcy courts can enter final judgment on fraudulent transfer claims post-Stern.").

The facts and circumstances surrounding the claims—not simply whether they are state common law claims—also may affect whether a claim is "core" or "non-core." See Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d 1242 (3rd Cir. 1994) (considering no right to jury trial for legal malpractice—though a state law tort claim—in  bankruptcy after going through Granfinanciera test); Northwestern Institute of Psychiatry, Inc. v. Travelers Indem. Co., 268 B.R. 79, 86–92 (E.D. Pa. 2001) (explaining that the accrual of a claim pre- or post-petition may affect its categorization as "core" or "non-core"). The defendants simply rely on the fact that certain claims are traditionally state court claims in arguing their right to a jury trial. This is not enough.

I will not make any rulings on the "core" or "non-core" nature of the proceedings at this time. If necessary, I will address this point when and if these motions are re-filed. Assuming some claims are "core" and others "non-core"—as the defendants imply—there is no prejudice to the defendants in delaying this ruling. The claims would proceed together during pre-trial because they appear to be "intertwined." If the defendants are entitled to a jury trial on some claims, the claims will be tried together, if a trial is necessary. See In re Carpenter, No. 12–21, 2012 WL 5990222, at *3 (W.D. Pa. Nov. 30, 2012) (explaining how, when core and non-core claims are intertwined and based on the same factual predicate, the non-core claims "should be managed through trial in conjunction with the core claims."). Keeping them together in Bankruptcy Court during pre-trial and discovery promotes their efficient adjudication.

## IV.     Conclusion

I will deny the motions to withdraw a reference without prejudice.[28] Given the

considerations explained above, discovery and pre-trial motions on Ciardi and CCA adversary

proceedings should be handled by the Bankruptcy Court.[29] See Feldman v. ABN AMRO Mortg.

---

[28] Given that this motion implicates important constitutional considerations, a denial of the motion with prejudice would not be warranted. If the defendants re-file this motion at a later time, I strongly encourage them to pay greater attention to the governing precedent on the issues they raise.

[29] Like magistrate judges, Bankruptcy Judges may oversee pre-trial motions and discovery without running afoul of constitutional boundaries. See, e.g., Feldman v. ABN AMRO Mortg. Group Inc., 515 B.R. 443, 448 (E.D. Pa. 2014) (Goldberg, J.) ("It is now clear that the bankruptcy court can conduct the necessary pretrial proceedings, including submitting proposed findings on dispositive motions, without overstepping the bounds of its constitutional authority."); Pennsylvania Academy of Music v. Regitz, No. 10–14377, 2010 WL 4909952, at *3 (E.D. Pa. Nov. 30, 2010) (Baylson, J.) ("Moreover, the fact that Defendants are entitled to a jury trial in this Court does not mean pre-trial proceedings must be conducted in the District Court. Rather, at this stage, the decision to withdraw is discretionary: the Court may 'withdraw[ ] the entire adversary matter, or withdraw[ ] only the trial portion, leaving the pre-trial and discovery matters to be handled by the bankruptcy judge.'"); Northwestern Institute of Psychiatry, Inc. v. Travelers Indem. Co., 268 B.R. 79, 84 (E.D. Pa. 2001) ("[I]t is not uncommon for district courts to defer withdrawal of the reference to allow the bankruptcy court to handle a proceeding until such time as the district court determines that the bankruptcy court may not do so. Many district courts have held that withdrawal of the reference on the ground that a party is entitled to a jury trial should be deferred until the case is 'trial ready.'").

See also Williams v. Avnet, Inc. (In re Techs. Liquidations Co.), No. 07–177, 2007 WL 1152518, at *1 (W.D. Pa. Apr. 17, 2007) (denying a permissive withdrawal based on a right to a jury trial without prejudice so that bankruptcy court could handle pre-trial proceedings); Am. Classic Voyages Co. v. Westaff (USA), Inc., 337 B.R. 509, 512 (D. Del. 2006) ("Courts… have TTT recognized that it serves the interests of judicial economy and efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial matters, even if the action will ultimately be transferred to a district court for trial." (citation omitted)); MicroBilt Corp. v. Fidelity Nat. Information Services, No. 12–3861 (JAP), 2012 WL 4955267, at *4 (D.N.J. Oct. 16, 2012) ("The Court is aware of Defendants' concern that the Bankruptcy Court does not have the constitutional authority to finally adjudicate the claims in the Adversary Proceeding. It is not necessary to decide the issue at this time, however, because even if the District Court ultimately must adjudicate the matter, the Bankruptcy Court is currently in the best position to preside over the Adversary Proceeding and resolve motions and discovery disputes until such time as the case is ready for final adjudication.").

Group Inc., 515 B.R. 443, 448 (E.D. Pa. 2014) ("Given the resources already expended in that forum, and the possibility that the adversary proceedings will never reach the stage at which a jury trial is held in this Court, we find that economy of both the Court and the parties' resources is best served by denying the Trustee's motion.").

Ciardi and CCA may re-file motions to withdraw a reference after any rulings on motions for summary judgment have been made by the Bankruptcy Court on claims that have not been resolved.[30]

An appropriate Order follows.

---

[30] See Executive Benefits Ins. Agency v. Arkison (In re Bellingham), 134 S. Ct. 2165, 2174–75 (2014) (explaining how a district court may later correct a jurisdictional issue related to later categorization of claims as non-core by reviewing the bankruptcy court's findings *de novo* and treating them as "proposed," in the event a party did not consent to the jurisdiction of the bankruptcy court to enter final judgment on non-core claims); Perkins v. Verma, No. 11–2557 (SDW) (MCA), 2011 WL 5142937, at *5 (D.N.J. Oct. 27, 2011) ("The Bankruptcy Court may also rule on summary judgment motions after the conclusion of discovery because a 'bankruptcy judge ruling on [a] summary judgment motion does not raise Seventh Amendment issues since motion [is] disposed of as a matter of law and review by Article III judges is *de novo*.'"); In re Carpenter, No. 12–21, 2012 WL 5990222, at *3 (W.D. Pa. Nov. 30, 2012) ("A district court may deny a motion to withdraw until the case is 'trial ready.'").